*1105 TEXTO COMPLETO DE LA SENTENCIA
Comparecen ante nos, Madeline Pérez Fernández (en adelante Pérez), y el Municipio de Guaynabo (en adelante el Municipio), y nos piden mediante recursos de apelación separados, los cuales fueron consolidados por este Tribunal, que revisemos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el día 12 de julio de 1999, notificada y archivada en autos el 12 de agosto de 1999. El 23 de agosto de 1999, el Municipio presentó una solicitud de determinaciones de hechos y de derecho adicionales, la cual fue resuelta el 26 de octubre de 1999, notificada y archivada en autos el 29 de octubre de 1999. Mediante la referida sentencia, el tribunal de instancia declaró ha lugar la demanda sobre discrimen por razón de sexo presentada por Pérez en contra del Municipio y el Director de Recursos Humanos, Antonio O'Neill, (en adelante O'Neill), y además desestimó la misma a favor del Alcalde de Guaynabo, Héctor O'Neill (en adelante el Alcalde), por entender que la prueba presentada no lo relacionó con los sucesos que motivaron la presentación de la demanda.
Luego de estudiado los hechos, incluyendo la transcripción de la vista en su fondo, así como el derecho aplicable, CONFIRMAMOS la resolución recurrida.
I
Los hechos que dan inicio a la presente controversia son los siguientes. Pérez trabajó desde el 16 de mayo de 1994 hasta el 31 de diciembre de 1996 como empleada transitoria del Municipio en el puesto de Auxiliar de Oficina del Departamento de Radiografía del Centro de Diagnóstico y Tratamiento (CDT).
*1106 El 31 de diciembre de 1996, terminaron los contratos de empleos temporeros de 522 empleados transitorios del Municipio, entre los que se encontraba el de Pérez. A raíz de ello, en enero de 1997, Pérez visitó la Oficina de Personal del Municipio en donde fue entrevistada por O'Neill, quien le solicitó que regresara más tarde con varios documentos para poder tramitar una solicitud de empleo.
El 18 de febrero de 1997, Pérez volvió a visitar la Oficina de Personal del Municipio con los documentos solicitados, teniendo para esa fecha siete (7) meses de embarazo. En dicha entrevista, O'Neill le informó que los contratos de empleados temporeros del CDT no iban a ser renovados por el Municipio.
El 11 de abril de 1997, Pérez presentó una querella bajo la Ley Núm. 2 del 17 de octubre de 1961, 32 L.P.R. A. see. 3118 et seq. según enmendada, en contra de O'Neill y el Alcalde, ambos en su carácter oficial y personal, y al Municipio, en el Tribunal de Primera Instancia, Sala Superior de Bayamón. Alegó Pérez en la querella que O'Neill no le renovó el contrato de empleo temporero por su estado de embarazo, ya que éste le manifestó que no le convenía al Municipio emplear una persona que estaría dos (2) meses fuera del trabajo por maternidad, siendo tal actuación contraria a la Ley Núm. 69 del 6 de julio de 1985, 29 L.P.R.A. sees. 1321-1341. Además, Pérez solicitó al Tribunal que se ordenara al Municipio extenderle un nombramiento regular de carrera como empleada del Municipio, retroactivo a febrero de 1997, con el pago de todos los salarios y beneficios marginales dejados de devengar hasta entonces, y condenarlos al pago de una suma no menor de setenta y cinco mil dólares ($75,000.00), por los daños y perjuicios sufridos a causa del Hisr.rimp.ri, más las costas y honorarios de abogado.
El 28 de mayo de 1997, O'Neill y el Alcalde, en su carácter oficial, y el Municipio, contestaron la querella y alegaron que el embarazo de Pérez no fue tomado en consideración al momento de decidir no renovarle el contrato de empleo temporero. El 10 de septiembre de 1997, O'Neill y el Alcalde, en su carácter personal, contestaron la demanda alegando que la misma, tal y como estaba redactada, dejaba de exponer hechos constitutivos de una causa de acción válida.
El 3 de febrero de 1998, durante la continuación de la conferencia con antelación al juicio, las partes se allanaron a que el caso se resolviera por la vía ordinaria por ser muy complejo para ser atendido por la vía sumaria.
El juicio en su fondo fue celebrado durante los días 10, 11 y 25 de marzo, 4 de mayo y 18 de noviembre de 1998.
Luego de Pérez haber terminado su testimonio, el Municipio solicitó la desestimación de la querella bajo la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 39.2(c). El Tribunal de Primera Instancia desestimó la misma en relación con el Alcalde en su carácter personal.
El 12 de julio de 1999, notificada y archivada en autos el 12 de agosto de 1999, el Tribunal de Primera Instancia emitió sentencia declarando ha lugar la querella de discrimen por razón de género y estimó los daños sufridos por Pérez en veinte mil dólares ($20,000.00). Por lo tanto, condenó al Municipio y a O'Neill, en su carácter personal y oficial, pagarle solidariamente a Pérez el doble de los daños estimados por el Tribunal, más diez mil dólares ($10,000.00) en honorarios de abogado. El Tribunal de Primera Instancia fundamentó su decisión de la siguiente manera:

"Esta reunión del 18 de febrero de 1997 entre la demandante y el Sr. O'Neill, está llena de inconsistencias.

Por un lado, se le informa a la demandante que no se le renovará el nombramiento transitorio a ninguna persona que hubiere trabajado en el CDT; por otro lado, se nombra ese mismo día a Mariela Guzmán Guznán en la misma plaza que ocupaba la demandante, pero en otro número de puesto, ejerciendo otras funciones. Por un lado, nos asegura el Sr. O'Neill que el Sr. Alcalde le había informado que no se renovarían los contratos transitorios de los empleados del CDT; por otro lado, afirma el Sr. O'Neill que fue el Sr. Alcalde quien le 
*1107
indicó que le extendiera el nombramiento a Mariela Guzmán Guzmán. Ante estas anomalías, el Sr. Antonio O'Neill tiene una sola explicación: él no sabe porqué se nombró a Mariela Guzmán Guzmán en el puesto de Auxiliar de Oficina del CUT y no a la demandante. No nos satisface su explicación...

El hecho indubitado en este caso es que, el 18 de febrero de 1997, ante la posibilidad de nombrar a una de dos (2) mujeres al puesto de Auxiliar de Oficina en el CDT, se nombró a una no embarazada, prefiriéndola a la embarazada y sin explicación racional alguna. Además, se le hizo claro a la mujer embarazada que la obligación legal de concederle una licencia por enfermedad, era un inconveniente para su nombramiento."

El 23 de agosto de 1999, el Municipio presentó una moción de determinaciones de hechos y conclusiones de derecho adicionales, y el 3 de septiembre de 1999, presentó una moción en la cual se opuso a la imposición de honorarios de abogado a favor de Pérez. Fundamentó su oposición en que las opiniones de Colondres Vélez v. Bayrón Vélez, 114 D.P.R. 833, 842-843 (1983); Rodríguez Cruz v. Padilla Ayala, 125 D.P.R 486, 525 (1990); y Rodríguez Roldan v. Municipio de Caguas et al., 133 D.P.R. 694, 703 (1993), en las que se establece que no se pueden imponer honorarios de abogado a un municipio en casos de daños y perjuicios y cobro de dinero.
El 13 de septiembre de 1999, el Tribunal de Primera Instancia ordenó a Pérez expresarse en cuanto a la moción de determinaciones de hechos y conclusiones de derecho adicionales presentada por el Municipio. El 1 de octubre de 1998, Pérez presentó replica a la moción en oposición a la imposición de honorarios de abogado y una moción en oposición a las determinaciones de hechos y conclusiones de derecho adicionales. Pérez alegó que la oposición a que se le condene al Municipio pagar los honorarios de abogados, no procede, porque la imposición de honorarios no fue basada en conducta temeraria, sino a la luz de lo establecido en el artículo de la Ley Núm. 69, 29 L.P.P.A. see. 1338, supra, el cual establece que "en la sentencia que se dictare contra cualquier patrono u organización obrera, se le impondrán a éstos las costas y una suma razonable que nunca será menor de trescientos (300) dólares para honorarios de abogado...".
En repuesta a la moción en oposición a imposición de honorarios de abogado presentada por el Municipio, el 20 de septiembre de 1999, notificada y archivada en autos el 15 de octubre del mismo año, el Tribunal de Primera Instancia dictó la siguiente orden: [ejntiéndase impuestos los honorarios al Sr. Héctor O'Neill en su carácter personal.
El 22 de octubre de 1999, el Municipio presentó una moción de reconsideración a la orden del 20 de septiembre del mismo año, en la cual expuso que la orden emitida era contraria a la sentencia del 12 de agosto de 1999 porque la misma había sido desestimada en cuanto al Alcalde en su carácter personal y oficial.
El 26 de octubre de 1999, notificada y archivada en autos el 29 de octubre del mismo año, el Tribunal de Primera Instancia emitió una resolución en la que concedió dos enmiendas a las determinaciones de hechos de la sentencia del 12 de agosto de 1999 y denegó las otras. Además, en esta resolución enmendó la orden del 20 de septiembre de 1999 para establecer que la condena al pago de honorarios de abogado era en contra de O'Neill en su carácter personal.
El 27 de octubre de 1999, Pérez presentó una moción de reconsideración de la orden del 20 de septiembre de 1999, en la que alegó que procedía la imposición de honorarios de abogado en contra del Municipio por ser bajo el artículo 18 de la Ley Núm. 69, supra. El 1 de noviembre de 1999, el Tribunal de Primera Instancia declaró la misma no ha lugar.
No conforme con lo resuelto, el Municipio y Pérez acuden oportunamente ante nos mediante la presentación de dos recursos de apelación. El Municipio en su recurso de apelación (KLAN-99-01272) alegó que el Tribunal de Primera Instancia cometió los siguientes cinco (5) errores:

"1. Erró el Honorable Tribunal de Instancia al no desestimar, como materia de derecho, la demanda, por

*1108
ésta no aducir hechos que ameritasen la concesión de un remedio de derecho.

2. Erró el Honorable Tribunal de Instancia al determinar que el asunto planteado en.el presente caso lo fue si se discriminó por razón de embarazo en el proceso de escoger a una persona para ser nombrada a un puesto transitorio de Auxiliar de Oficina en el CDT de Guaynabo.

3. Erró el Honorable Tribunal de Instancia al determinar que los demandados-apelantes discriminaron contra la apelada por motivo de su embarazo al nombrar nuevamente a la Srta. Marieta Guzmán Guzmán a la plaza de Auxiliar de Oficina en el Departamento de Récords Médicos del CDT de Guaynabo en la cual se había desempeñado por muchos años, en vez de nombrar a la apelada.

4. Erró el Honorable Tribunal de Instancia al determinar que los nombramientos extendidos a los múltiples empleados que recibieron nuevos contratos transitorios a las mismas plazas en que se habían desempeñado, entre ellas las Srtas. Johanna Estrella Huertas (Auxiliar de Oficina, Centro de Salud) y Ana M. Santiago Pérez (Auxiliar de Hospital) abonan a la determinación del Tribunal a los efectos de la existencia de discrimen.

5. Erró el Honorable Tribunal de Instancia al otorgarle a la apelada daños excesivos que no están sustentados por la prueba y al no determinar que la apelada no mitigó daños y se removió del mercado laboral."

Por otro lado, Pérez alegó en su escrito de apelación (KLAN-99-01295) que el Tribunal de Primera Instancia cometió los siguientes dos (2) errores:

"1. Erró el Tribunal de Primera Instancia al desestimar la demanda contra el Alcalde, en su carácter personal, al concluir que no desfiló prueba suficiente en derecho para relacionar al codemandado Héctor O'Neill con los hechos alegados en la demanda y al no concluir que éste violó la Ley 69 de 1985 al no investigar ni tomar acción correctiva alguna al ser informado oficialmente que el Director del Municipio rechazó emplear a la demandante por razón de su estado de embarazo.

2. Erró el Tribunal de Primera Instancia al eximir al Municipio del pago de los honorarios de abogado impuestos en la sentencia y al no resolver, de conformidad con lo dispuesto en la totalidad de la sentencia, incluyendo la suma de $10,000.00 concedida por concepto de honorarios de abogado."

El 4 de enero de 2000, emitimos una resolución en la cual ordenamos la consolidación de las apelaciones presentadas por el Municipio y Pérez, autorizamos la regrabación de los procedimientos judiciales llevados ante el Tribunal de Primera Instancia y concedimos a las partes hasta el 30 de enero de 2000 para someter la exposición narrativa de la pmeba.
El 28 de enero de 2000, el Municipio presentó una moción en la que solicitó que se desestimara el recurso de apelación presentado por Pérez, por ésta no haber cancelado los aranceles establecidos por ley, bajo el fundamento de que la querella fue presentada bajo la Ley Núm. 2, pero al convertirse en un procedimiento ordinario, tenía que cancelar aranceles.
El 7 de febrero de 2000, Pérez presentó una moción en oposición a la solicitud de desestimación presentada por el Municipio. Fundamentó su oposición en lo establecido en la Opinión de Valentín v. Housing Promoters, Inc., Res. 9 de octubre de 1998, 98 J.T.S. 132; y en el principio de que los estatutos de carácter reparador deben de ser interpretados liberalmente, en favor de los derechos del trabajador.
El 18 de febrero de 1000, el Municipio presentó una replica a la moción en oposición a desestimación presentada por Pérez.
El 3 de mayo de 2000, emitintos una resolución en la que declaramos no ha lugar la moción de *1109 desestimación del recurso de apelación presentado por Pérez.
Estando perfeccionado el recurso ante nos, procedemos a resolver.
n
Por estar relacionados con la apreciación de la pmeba por parte del tribunal de instancia los cinco señalamientos de error del Municipio y el primer señalamiento de error de Pérez, discutiremos en conjunto los mismos.
El alcance de la revisión judicial sobre cuestiones de hechos está regulado por lo dispuesto en la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. HI, R. 43.2, la cual en lo pertinente dispone que:

"Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto, a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos."

Por ello, el Tribunal Supremo ha establecido que no debemos intervenir con las determinaciones de hechos que hace un tribunal de instancia y sustituir su criterio por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor, Ramos Acosta v. Caparra Dairy Inc., 113 D.P.R. 357, 365 (1982), a menos que se demuestre que dicho foro actúo con pasión, prejuicio o parcialidad. Vélez v. Secretario de Justicia, 115 D.P.R. 533, 545 (1984). Así, la apreciación de la pmeba efectuada por el Tribunal de Primera Instancia merece gran deferencia, por lo que sólo en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio o parcialidad, o error manifiesto, los tribunales de apelaciones no intervienen en cuanto al trasfondo fáctico determinado por instancia. Monllor Arzola v. Sociedad de Gananciales, Op. del 13 de junio de 1995, 95 J.T.S. 77, págs. 962-963; Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez Cruz v. Hospital la Concepción, 115 D.P.R. 721 (1984).
No obstante, los foros apelativos pueden dejar sin efecto las determinaciones de hechos del foro de instancia, siempre que del examen de la totalidad de la evidencia, el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hechos están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Maryland Casualty Co. v. Quick Const. Corp., 90 D.P.R. 329, 336 (1964).
Asimismo, los tribunales apelativos pueden considerar cualquier error de derecho cometido por el Tribunal de Primera Instancia. En Coll v. Picó, 82 D.P.R. 27, 37 (1970), nuestro más alto foro le reconoció a los tribunales en cualquier instancia la facultad de determinar el derecho aplicable a los hechos del caso con independencia de los planteamientos de las partes, incluso de estipulaciones sobre el derecho que hayan otorgado las partes.
La Sección Primera del Artículo II de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, prohibe el discrimen por razón de sexo. Esa disposición de rango constitucional reza de la siguiente manera:
"La dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana." Art. II, Sec. 1, Const, de Puerto Rico.
Además, la práctica de discriminar por razones de sexo ha sido proscrita en el ambiente laboral mediante la adopción de varias leyes pertinentes, como lo son la Ley Núm. 17 del 22 de abril de 1988, 29 L.P.R.A. see. 155 et. seq; la Ley 3, del 13 de marzo de 1942, conocida como la Ley para la Protección de las Madres Obreras, 29 *1110 L.P.R.A. secs. 467-474; la Ley Núm. 69 del 6 de junio de 1985, 29 L.P.R.A. sec. 1341 et seq; y la Ley Núm. 100 del 30 de jumo de 1959, según enmendada, 29 L.P.R.A. sec. 146 et seq.
Sobre estas leyes señala el Informe de Discrimen por Razón de Género en los Tribunales, Comisión Jurídica Especial del Tribunal Supremo de Puerto Rico, Agosto 1995, que:
"El objetivo de estas leyes es equiparar las oportunidades de las mujeres y jos hombres en el mundo del trabajo, ya que siendo las mujeres quienes pueden quedar embarazadas, podrían quedar desfavorecidas por razón de esta condición biológica. Estas leyes protegen a la mujer respecto a su derecho a trabajar y su opción, constitucionalmente protegida, de concebir y tener hijos. De no existir estas disposiciones, las empleadas tendrían que escoger entre trabajar sin concebir, por razón de su necesidad económica, o concebir y verse privadas de la oportunidad de trabajar y obtener ingreso."
La Ley Núm. 100, supra, en su Artículo 1, prohibe a todo patrono despedir, suspender, discriminar contra un empleado o empleada, en relación con sp sueldo, términos, categorías, condiciones o privilegios de trabajo, o deje de emplear, rehúse emplear o reemplear a una persona. Además prohibe que un patrono prive a cualquier persona de oportunidades de empleo por razón de raza, color, sexo, origen social, origen nacional o religión. Dicha Ley es extensiva a todo patrono, con o sin fines de lucro, e incluye a aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas.
Por otro lado, la Ley Núm. 69, supra, fue aprobada específicamente para proveer unas salvaguardas que desalienten las prácticas discriminatorias por razón de sexo que se realizan más contra la mujer en las fases de oportunidad de empleo, remuneración y beneficios marginales. A tenor con esta Ley, constituiría una práctica ilegal el que un patrono excluya del empleo a solicitantes o empleadas por razón de su embarazo, parto o condiciones médicas relacionadas. La compensación civil a ser concedida será por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo, o una suma no menor de cien ($100) ni mayor de mil ($1,000), a discreción del Tribunal, si no se pudiesen determinar daños pecuniarios.
En el caso de autos, el Tribunal de Primera Instancia, luego de aquilatar la prueba ante sí, concluyó que las motivaciones para la terminación del empleo de Pérez no fueron cuestionadas, por lo que no era de aplicación la norma que establece que un empleado transitorio, no tiene expectativa de permanencia. Sin embargo, encontró probado que Pérez fue víctima de discrimen a la hora de escoger a una persona para ser nombrada a un puesto transitorio de Auxiliar de Oficina en el CDT del Municipio.
Concluimos que la determinación del foro de instancia está sostenida en la totalidad de la evidencia que tuvo ante sí. El Municipio, O'Neill y Pérez, no han podido derrotar con sus alegaciones la deferencia de la cual gozan las determinaciones de hechos y la apreciación de la prueba realizadas por el tribunal sentenciador.
En cuanto al error señalado por Pérez sobre la imposición de los honorarios de abogado a O'Neill, la cual entendemos correcta en derecho, no entraremos en la discusión del mismo, ya que independientemente de a quién el tribunal de instancia impuso los honorarios de abogado, ésta obtuvo el remedio solicitado.
III
Por todos los fundamentos anteriormente expuestos, CONFIRMAMOS la sentencia en ambos recursos de apelación.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General